FILED
2005 Jul-26 PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM RODNEY JONES, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 03-PWG-2490-NE |
| SIDNEY L. ODEN, SR., | ) |
| Defendants. | ) |

FINDINGS AND RECOMMENDATION

William Rodney Jones, formerly an inmate in the custody of the Department of Corrections, initiated this civil action with a complaint alleging that Corrections Officer Sidney L. Oden, Sr. and Warden Billy Mitchem of the Limestone Correctional Facility had violated plaintiff's constitutional rights on August 24, 2003. In his complaint he sought $250,000 in punitive damages in addition to compensatory damages and injunctive relief. (Doc. #1). The defendants were required to submit a special report addressing Mr. Jones's claims. (Doc. #11). The undersigned magistrate judge entered a report and recommendation in which it was recommended that the claims made against Warden Billy Mitchem be dismissed and that the Alabama Departtment of Corrections be dismissed as a defendant. (Doc. #7). After consideration of objections filed by Mr. Jones, Warden Mitchem and the Department of Corrections were dismissed as defendants. (Doc. #10). [Order of United States District Judge William M. Acker, Jr.]. A second order for special report was entered directing Sidney L. Oden to respond to the allegations. That report was received together with exhibits. (Doc. #13). The undersigned magistrate judge recommended that Mr. Oden's motion for summary judgment be DENIED. (Doc. #22). That recommendation was adopted by United States District Judge Sharon L. Blackburn. The court then directed the parties to complete discovery and file

pretrial narrative statements. (Doc. #28). A pretrial conference was held at which Mr. Jones appeared *pro se*. An evidentiary proceeding was held pursuant to the provisions of 28 U.S.C. § 636(b) and LR 72.1(b)(3)(D); see also *McCarthy v. Bronson*, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991).

The basis of Mr. Jones's complaint is his contention that on August 24, 2003 he was choked by Corrections Officer Sidney L. Oden, Sr. in violation of the Eighth Amendment to the Constitution of the United States.

## APPLICABLE LAW

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); see also *Hudson v. McMillan*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously or sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials and any effort made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S.Ct. at 995; see also *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors "inferences may be drawn as to whether the force used could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it will occur." *Whitley*, 475 U.S.

at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).[1/] Whether the use of force was de minimus is a factor though not the controlling one in the assessment of an Eighth Amendment claim. The absence of a "serious injury" alone is insufficient to dismiss a plaintiff's Eighth Amendment claim. Instead, analysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered.

Burdens of Proof

This matter was heard non-jury. The burden of proof in a civil case, however, is the same regardless of whether the finder of fact is a judge in a bench trial or a jury. *Cabrera v. Jakabovitz*, 24 F.3d 372, 380 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). That is, a plaintiff bears the burden of satisfying the finder of fact that he or she has proven every element of his or her claim by a preponderance of the evidence. A preponderance of the evidence means such evidence, as when considered with that opposed to it, has more convincing force, and demonstrates that what is sought to be proved "is more likely true than not true." See *Pattern Jury Instructions* (Civil Cases) *of the District Judges Association of the Eleventh Circuit*, basic instruction number 6.1 (1990).

In bench trials the judge serves as the sole factfinder and, thus, assumes the role of the jury. In this capacity, the judge's function includes weighing the evidence, evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of law. *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993) (Holding that "it is the exclusive province of the judge in non-jury trials

---

[1/] The Eleventh Circuit has made clear that in an Eighth Amendment excessive force claim a defense of qualified immunity is not available because by its very nature the claim requires proof of the use of force that is "maliciously and sadistically [intended] to cause harm." As the Eleventh Circuit has observed there is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. See *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).

to assess the credibility of witnesses and to assign weight to the testimony."). Moreover, "a trial judge sitting without a jury is entitled to even greater latitude concerning the admission or exclusion of evidence." *Goodman v. Highlands Insurance Co.,* 607 f.2d 665, 668 (5th Cir. 1979) (citing *Wright v. Southwest Bank*, 554 F.2d 661 (5th Cir. 1977)).  See also *Lee v. Russell County Board of Education*, 684 F.2d 769, 776 n.5 (11th Cir. 1982) (stating that the court has "broad discretion over the admission of evidence in a bench trial.")

"Where there are two permissible uses of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer, North Carolina*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 80 L.Ed.2d 518 (1985).  Findings based on the credibility of witnesses demand "... even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what was said." *Id*., 470 U.S. at 575, 105 S.Ct. at 1512.  In *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed. 424 (1980), the Supreme Court interpreted the Federal Magistrate Judges Act in holding that a district judge need not rehear testimony on which a magistrate relied in accepting the magistrate judge's findings or recommendation. Rather, the court held, that the statutory command to a district judge to "make a *de novo* determination" of those portions of the magistrate judge's finding and recommendation to which the party objects is satisfied as long as the judge, rather than the magistrate exercises "ultimate adjudicatory power." *Id*. at 674-76, 100 S.Ct. at 2411-12.  The court also held this arrangement does not violate the Due Process Clause or Article III of the Constitution. *Id*. at 677-84, 100 S.Ct. at 2413-16.  In *Lewis v. Blackburn*, 630 F.2d 1105 (5th Cir. 1980) the Fifth Circuit held that before entering an order inconsistent with

the credibility choices made by a magistrate, a district judge must himself hear the testimony of witnesses whose testimony is determinative. *Id*. at 1109.[2/]

THE EVIDENTIARY PROCEEDING

SUMMARY OF TESTIMONY

Mark Pettit

Mark Pettit, an inmate in the custody of the Alabama Department of Corrections, testified that on Saturday, August 24, 2003 he was assigned to a cell with William Rodney (Will) Jones.[3/] Mr. Pettit testified that he heard an announcement for "pill call" to which inmates were summoned in order to obtain medication. He awakened Mr. Jones. Medication was normally dispensed by a nurse accompanied by corrections officers. Pettit stated that Mr. Jones was sitting on his bunk putting on his shoes when Sidney L. Oden, Sr., a corrections officer, entered the cell and grabbed Mr. Jones. According to Mr. Pettit, Jones "never said a word to the man." Pettit stated that Oden pushed Jones against the bunk. During his testimony Mr. Pettit acknowledged that in his statement provided immediately after the incident he did not report that Oden had grabbed Mr. Jones by the neck. Mr. Pettit testified that he was certain that the incident occurred on a Wednesday in August of 2003 because he was released the following Friday. (In fact the incident occurred on Saturday, August 24, 2003).

---

[2/] In the *en banc* decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit. See also *Proffitt v. Wainwright*, 685 F.2d 1227, 1242 (11th Cir. 1982).

[3/] At the time of the evidentiary proceeding Mr. Pettit was in custody. He had been released shortly after the incident, however, he had been incarcerated again prior to the evidentiary proceeding.

Lorenzo Watkins

Lorenzo Watkins, an inmate in the Department of Corrections and a former corrections officer, testified he heard a general announcement for pill call followed by a specific announcement for Mr. Jones. He stated that he saw defendant Sidney Oden walking toward the cell of Jones and Pettit with his baton out. The baton is a billy club or instrument used to strike recalcitrant inmates. Watkins, unlike Mr. Pettit, testified that he heard loud talking coming from the cell. Watkins also stated that he had frequently heard Mr. Jones's name called as being late for pill call.

Corrections Officer and Defendant Oden

Corrections Officer Oden testified that the officer assigned to the cubicle had signaled the pill call rather than Oden himself. Corrections officers observed the pill call process because inmates frequently pretended to take medication and then sell the medication to the other inmates. He testified that Will Jones was frequently late to pill call. He stated that he did go to the cell to tell Mr. Jones to come to pill call and that Jones "began cussing." When Mr. Jones later went to pill call he refused to take his medication. Mr. Oden claims that he "never put his hands on [Mr. Jones]." Oden testified that he later went back to Mr. Jones's cell and found him smoking, which is a violation of an institutional policy. He told Mr. Jones that he was going to "write him up." Oden did not write a disciplinary report for Jones. Oden stated that he learned of the "charges" that he had grabbed Jones on the following Wednesday. He stated that he then concluded he would not write the disciplinary because it would appear to be in "retaliation."

William Rodney Jones

Mr. Jones testified that Oden called pill call and that he later heard Oden call his name. He stated that he looked out into the common areas of the cell block and saw inmates were in line. He

then went back to get dressed. He stated that Oden then came into the cell, grabbed him by the throat and pushed him against a bunk. He stated that Oden later came to the cell and said he was going to "write me up" to which Mr. Jones responded "I said do what you gotta do." Mr. Jones stated that he did not immediately make a complaint because he was about to end his sentence.[4] He telephoned his family and they in turn complained to the warden. After the warden received the information concerning Mr. Jones complaint, he directed that an investigation be conducted and the Mr. Jones be taken to the health unit for an examination. He acknowledged that at the time of the examination no bruises or abrasions were found.

Corrections Officer Terry Lynch

Officer Lynch testified that on August 24, 2003 he made the announcements for pill call, not Mr. Oden. He said that Oden asked him to relieve him so that Oden could go get Jones to come to pill call he stated that he saw Jones go to pill call with Oden.

The parties stipulated to the admissibility of documents during the pretrial conference which included the report and investigation conducted on August 25, 2003. That report included a "body chart" in which "no bruising or abnormalities were noted to the neck or back." The report also included Mr. Pettit's statement in which he told officers on August 25, 2003 that "... Officer Oden came into the cell (14) with his baton in his right hand, he then pushed inmate Jones up against the bed, and started cussing and hollering saying that he would write him up for insubordination. But inmate Will Jones never said a word to Officer Oden...." Mr. Jones's medical records were admitted and included a September 2, 2003 complaint that his neck hurt when he turned it to the left. The

---

[4] Mr. Jones also asked Correctional Officer Oden about what he called a "presentence report" which was served by Oden in June of 2003. Apparently, the service of this report, which was not prepared by Oden was a source of irritation to Mr. Jones.

medical records stated that the injury had begun "a week ago" when he was grabbed by the neck in the dorm. Based upon Mr. Jones's complaint the physician ordered Motrin and warm towels together with stretching exercises. In an August 25, 2003 Health Service Request Form Mr. Jones stated "my neck has been hurt by Officer Oden. It's hurting down in my back. I need to get something for my headache and pain in my neck." Mr. Jones was seen that same day by a registered nurse who observed "no visible injury noted. However, Motrin was order together with moist heat."

## FINDINGS OF FACT

The evidence preponderates:

(1) On August 23, 2003 William Rodney (Will) Jones was an inmate in the custody of the Department of Corrections and protected by the Eighth Amendment to the Constitution.

(2) Mr. Jones wilfully chose not to appear to obtain his medication. Mr. Jones had failed to appear to take his medication on previous occasions.

(3) Mr. Jones became angry when Officer Oden told him to report to pill call. He began shouting. There is no credible evidence that Mr. Jones was choked, grabbed or otherwise assaulted by Officer Oden.

(4) The testimony of Mr. Pettit is inconsistent with his prior statements made contemporaneously with the events.

(5) Mr. Pettit is a particularly unbelievable witness.

(6) The absence of any indication from the medical reports of an injury to the neck, particularly any evidence of choking, is material to the conclusion that Mr. Jones's version of the events has not been proven to be more likely true than not true.

(7)   Mr. Jones's motivation for bringing an action against Mr. Oden may have been related to events which preceded August 23, 2003.

After consideration of the evidence adduced at the evidentiary proceeding and the applicable law, it is RECOMMENDED that judgment enter on behalf of defendant Sidney L. Oden, Sr. and that Mr. Jones take nothing.

The parties are DIRECTED to Rule 72(b), *Federal Rules of Civil Procedure*.

As to the foregoing it is SO ORDERED this the 26th day of July, 2005.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE